In the
United States Court of Appeals
For the Seventh Circuit

No. 01-1806

Level 3 Communications, Inc.,

Plaintiff-Appellee,

v.

Federal Insurance Company,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 5346--George W. Lindberg, Judge.

Argued October 25, 2001--Decided November 26, 2001

  Before Bauer, Posner, and Evans, Circuit
Judges.

  Posner, Circuit Judge.  This appeal comes
in a diversity suit seeking damages from
a pair of insurance companies a primary
carrier, Federal, and an excess carrier
that's no longer a party) that refused to
pay on a policy of directors' and
officers' liability insurance, a "D&O"
policy, as it's known. Despite its name,
such a policy insures not only officers
and directors themselves but also their
corporation if, as happened here, the
corporation indemnifies them for their
liability. This is known as "company
reimbursement coverage," as distinct from
"direct" coverage of the directors and
officers. E.g., Ratcliffe v.
International Surplus Lines Ins. Co., 550
N.E.2d 1052, 1056 (Ill. App. 1990);
Caterpillar, Inc. v. Great American Ins.
Co., 62 F.3d 955, 957 (7th Cir. 1995);
Harbor Ins. Co. v. Continental Bank
Corp., 922 F.2d 357, 359 (7th Cir. 1990).

  The district court granted summary
judgment for Federal initially on the
ground that one of the plaintiffs,
Pompliano, in the suit against Level 3 (a
securities-fraud suit brought by
Pompliano and other shareholders of a
corporation alleged to have been
defrauded by Level 3) fell within the
"insured versus insured" exclusion in the

policy; Pompliano had been a director of one of Level 3's subsidiaries, and as a result was covered by Federal's policy. We held that Pompliano's status did not bar the entire claim by the insured, that instead his share of the settlement in the securities-fraud suit should be subtracted and Level 3 thus entitled, in the absence of other defenses by Federal, to recover the rest of the settlement from Federal under the D&O policy. Level 3 Communications, Inc. v. Federal Ins. Co., 168 F.3d 956 (7th Cir. 1999). On remand, the district court determined that the amount of the settlement had been $11.8 million, that it was a loss within the meaning of the policy, that $1.8 million of the settlement had gone to Pompliano, and that Federal was therefore liable to its insured, Level 3, for $10 million.

Federal has appealed, arguing that the settlement, though an outlay by the insured, was not a "loss" within themeaning of the insurance policy, defined as "the total amount which any Insured Person becomes legally obligated to pay . . . including, but not limited to . . . settlements," because the relief sought in the suit against Level 3 was restitutionary in nature. The plaintiffs had sold shares in their corporation to Level 3 and charged that they had done so because of fraudulent representations that Level 3 had made. In effect, Level 3 was accused of having obtained the plaintiffs' company by false pretenses; and the plaintiffs' suit sought to rescind the transaction and recover their shares, or rather the monetary value of the shares because their company can no longer be reconstituted. It's as if, Federal argues, Level 3 had stolen cash from Pompliano and the other shareholders and had been forced to return it and were now asking the insurance company to pick up the tab. Federal continues that a D&O policy is designed to cover only losses that injure the insured, not ones thatresult from returning stolen property, and that if such an insurance policy did insure a thief against the cost to him of disgorging the proceeds of the theft it would be against public policy and so would be unenforceable. Mortenson v. National Union Fire Ins. Co., 249 F.3d 667, 672 (7th Cir. 2001); Bank of the West v. Superior Court, 833 P.2d 545, 554-55 (Cal. 1992); Central

Dauphin School District v. American Casualty Co., 426 A.2d 94, 96 (Pa. 1981). This ground for dismissing Level 3's suit was raised by Federal in the initial summary judgment proceedings, and it is in retrospect unfortunate that the district judge did not decide whether it had merit, as that would have avoided the need for two appeals to resolve Level 3's entire case.

The interpretive principle for which Federal contends-- that a "loss" within the meaning of an insurance contract does not include the restoration of an ill-gotten gain--is clearly right. Local 705 International Brotherhood of Teamsters Health & Welfare Fund v. Five Star Managers, L.L.C., 735 N.E.2d 679, 683 (Ill. App. 2000); Republic Western Ins. Co. v. Spierer, Woodward, Willens, Denis & Furstman, 68 F.3d 347, 351-52 (9th Cir. 1995); Reliance Group Holdings, Inc. v. National Union Fire Ins. Co., 594 N.Y.S.2d 20, 24 (App. Div. 1993); Bank of the West v. Superior Court, supra, 833 P.2d at 553; Central Dauphin School District v. American Casualty Co., supra, 426 A.2d at 96; see also Chandler v. Alabama Municipal Ins. Co., 585 So. 2d 1365, 1367 (Ala. 1991). The two cases on which Level 3 relies, International Ins. Co. v. Johns, 874 F.2d 1447, 1454-55 (11th Cir. 1989), and Limelight Productions, Inc. v. Limelite Studios, Inc., 60 F.3d 767, 769 (11th Cir. 1995), are distinguishable, though Limelight only tenuously. The facts were similar to those in the present case, but the operative term in the insurance policy was "damages" rather than "loss," and so was broader. In re Estate of Corriea, 719 A.2d 1234, 1240-41 (D.C. App. 1998), is similar.

As the interpretive principle controls this case, we need not consider the issue of enforceability, though the two issues are intertwined, since obviously an insurance policy wouldn't be presumed to have been drafted in such a way as to make it unenforceable. Cf. Central Dauphin School District v. American Casualty Co., supra, 426 A.2d at 96.

It is true, as Level 3 emphasizes, that the plaintiffs in the underlying suit were not seeking either the return of the shares that Level 3 had allegedly winkled them out of or the value of the shares on

the date they were purchased. They were seeking the difference between the value of the stock at the time of trial and the price they had received for the stock from Level 3. That is standard damages relief in a securities-fraud case. But it is restitutionary in character. It seeks to divest the defendant of the present value of the property obtained by fraud, minus the cost to the defendant of obtaining the property. In other words, it seeks to deprive the defendant of the net benefit of the unlawful act, the value of the unlawfully obtained stock minus the cost to the defendant of obtaining the stock. It is equivalent to seeking to impress a constructive trust on the property in favor of the rightful owner. How the claim or judgment order or settlement is worded is irrelevant. An insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen, even if a more polite word than "stolen" is used to characterize the claim for the property's return.

We can imagine situations in which there would be a covered loss; this is important as showing that the D&O policy would not be rendered illusory by the acceptance of Federal's interpretation. An example would be a fraudulent statement by a corporate officer that inflated the price of the corporation's stock without conferring any measurable benefit on the corporation. Or suppose that unbeknownst to Level 3 the officer had stolen property for its benefit and, not knowing this, Level 3 defended against a suit seeking the return of the property and incurred heavy legal expenses in that defense. Those expenses would be a loss to the company not offset by any benefit to it, unlike the "expense" that consists simply of the value of the stolen property, a wash. Safeway Stores, Inc. v. National Union Fire Ins. Co., 64 F.3d 1282, 1286-87 (9th Cir. 1995). All that the plaintiffs in the underlying suit obtained was the amount they received in settlement of their claim against Level 3, and that amount was part of Level 3's gain from its officers' misbehavior. FTC v. Febre, 128 F.3d 530, 537 (7th Cir. 1997); Jordan v. Duff & Phelps, Inc., 815 F.2d 429, 441 (7th Cir. 1987); SEC v. First City Financial Corp., 890 F.2d 1215, 1230 (D.C. Cir. 1989); cf. Safeway Stores,

Inc. v. National Union Fire Ins. Co., supra, 64 F.3d at 1286 and n. 8.

Level 3 acknowledges that if a judgment had been entered in the suit against it on the basis of a judicial determination that it had engaged in fraud, Federal would win; the policy so provides. It couples this acknowledgment with the inconsistent assertion that almost the entire purpose of D&O policies is to insure corporations and their officers and directors against claims of fraud. Pressed at argument concerning this inconsistency, it argued that the line runs between judgments and settlements. As long as the case is settled before entry of judgment, the insured is covered regardless of the nature of the claim against it. That can't be right. Reliance Group Holdings, Inc. v. National Union Fire Ins. Co., supra, 594 N.Y.S.2d at 25 ("determination of this appeal should not hinge on the circumstance that Reliance made restitution by way of settlement instead of in satisfaction of a judgment after trial"). It would mean, as Level 3's lawyer confirmed at argument, that if Level 3, seeing the handwriting on the wall, had agreed to pay the plaintiffs in the fraud suit all they were asking for (a very large amount--almost $70 million), which they surely would not have done had there been no evidence of fraud (no rational defendant settles a nuisance suit for the full amount demanded in the complaint, unless the amount is trivial), Federal would still be obligated to reimburse Level 3 for that amount. And that would enable Level 3 to retain the profit it had made from a fraud. In fact Level 3 settled with the plaintiffs in the fraud suit for the not inconsiderable amount of $12 million after the trial had begun and much of the expense of defending the suit had therefore already been incurred. It is not surprising, therefore, that Level 3 has made no attempt to show that the fraud suit was groundless and the settlement merely an effort to avoid the expense of defending a nuisance suit.

If Level 3 had shown that the fraud suit was groundless, that there was no ill-gotten gain that insurance would enable it to keep, would the $12 million be a "loss" within the meaning of the policy? Federal argues no, that all that matters is that the payment by the insured for

which reimbursement is sought be in respect of a claim of fraudulent appropriation. Level 3 denies this. We need not decide; and prudence is definitely the better part of valor here, since we can find no guidance on the point from cases or other materials.

The judgment is reversed with instructions to enter judgment for the defendant.