SOUTHCENTRAL EMPLOYMENT
CORPORATION, Appellant

v.

BIRMINGHAM FIRE INSURANCE
COMPANY OF PENNSYLVANIA.

Superior Court of Pennsylvania.

Argued Nov. 28, 2006.

Filed May 31, 2007.

Brian C. Caffrey, Carlisle, for appellant.

David E. Edwards, Philadelphia, for appellee.

BEFORE: FORD ELLIOTT, P.J., LALLY–GREEN AND JOHNSON, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Southcentral Employment Corporation ("Southcentral") appeals the order of February 3, 2006, granting Birmingham Fire Insurance Company of Pennsylvania's ("Birmingham") motion for judgment on the pleadings. We affirm.

¶ 2 The Honorable J. Wesley Oler, Jr., in his February 3, 2006 opinion and order granting defendant/appellee Birmingham's motion for judgment on the pleadings, sets forth the facts of this matter as follows:

> For purposes of [Birmingham's] motion, the facts may be summarized as follows: Plaintiff is Southcentral Employment Corporation, a non-profit employment services corporation which expends 'funds made available to it by the United States Department of Labor, acting through the Commonwealth of Pennsylvania Department of Labor and Industry.' Defendant is Birmingham Fire Insurance Company of Pennsylvania,

with which [Southcentral] had a Not–for–Profit Protector Policy.

> On April 29, 2003, the Pennsylvania Department of Labor & Industry, Bureau of Workforce Investment (hereinafter the 'Department of Labor') issued a final determination from 1997, 1998, 1999, and 2000 audits of [Southcentral]. The determination identified and disapproved of several expenditures made by [Southcentral] during the course of its contracts with the Department of Labor in connection with 'excess revenue drawn down on various unidentifiable contracts, uncategorized expenses and unsupported debits and credits and accruals and payables, inability to account for classroom training funds, and inability to justify cost allocation basis adjustment.' The Department of Labor determined that [Southcentral] was 'required to pay ... $597,273.00 from non-Federal funds' to the Department.

> On March 12, 2004, [Southcentral] provided [Birmingham] with written notice of the final determination and claimed that such determination was covered under the 'wrongful acts' portion of the policy. [Birmingham] denied coverage of [Southcentral's] claim. In response, [Southcentral] has filed the instant declaratory judgment action seeking a determination that [Birmingham] is obligated to indemnify [Southcentral] in the amount [of] $597,273.00, and to provide a legal defense for [Southcentral's] opposition to and appeal from the charges assessed by the Department of Labor.

> According to the terms of the policy [Birmingham] is required to:

>> pay on behalf of the Organization Loss arising from a Claim first made against the Organization during the Policy Period or the Discovery Period (if applicable) and reported to the in-

surer pursuant to the terms of this policy for any actual or alleged Wrongful Act of the Organization.

The policy defines a 'Wrongful Act' by an organization as:

any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the Organization.... 'Wrongful Act' shall specifically include: (a) Employment Practice Claims; (b) Non–Employment Discrimination; (c) violation of the Sherman Antitrust Act or similar federal, state or local statutes or rules....

The policy defines 'Loss' as:

Damages, (including back pay and front pay), judgments, settlements, pre- and post-judgment interest, the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act and Defense Costs; however, Loss shall not include: (1) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds; ... (4) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

According to Endorsement 11 of the Policy, regarding 'Governmental Funding Defense Cost Coverage:'

In consideration of the premium charged, it is understood and agreed that the Loss shall not include the return funds which were received by the Organization or any other entity from any federal, state, or local governmental agency; provided, however, that with regard to Claims arising out of the return, or request to return, such funds, subject to a retention amount of $1,000,000, this policy shall pay Defense Costs up to $1,000,000 on a 50% coinsurance basis with 50% of

such Defense Costs to be borne by the Insured and to remain uninsured; and the remaining 50% of such Defense Costs to be covered by the Insurer subject to all other terms, conditions and exclusions of the policy.

Following the filing of an answer with new matter, to which [Southcentral] replied, [Birmingham] moved for judgment on the pleadings. In the motion, [Birmingham] asserts that even if [Southcentral's] activities constitute 'wrongful acts' under the policy they are still not considered a 'loss' according to Endorsement 11 of the policy. Finally, under Endorsement 11, [Birmingham] asserts that any obligation on its part to pay defense costs is limited to cases involving return funds in excess of $1,000,000.

Opinion and order, 2/3/06 at 2–4 (footnote citations to the record omitted).

¶ 3 On March 3, 2006, Southcentral filed a notice of appeal. Southcentral has complied with the trial court's order to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b), and the trial court has filed a Rule 1925(a) opinion.

¶ 4 Southcentral presents the following issues for this court's review:

A. WHETHER THE COURT ERRED AS A MATTER OF LAW IN CONSTRUING AN AMBIGUOUS EXCLUSIONARY PROVISION IN AN INSURANCE POLICY IN FAVOR OF THE INSURANCE COMPANY.

B. WHETHER THE COURT ERRED AS A MATTER OF LAW IN RULING, IN EFFECT, THAT THE INSURED COULD NOT POSSIBLY RECOVER AGAINST THE INSURANCE COMPANY ON A POLICY CONTAINING AN

AMBIGUOUS EXCLUSIONARY PROVISION.

C. WHETHER THE COURT ERRED AS A MATTER OF LAW IN RULING THAT THE INSURED IS NOT ENTITLED TO A LEGAL DEFENSE UNDER AN AMBIGUOUS EXCLUSIONARY PROVISION OF AN INSURANCE POLICY.

Southcentral's brief at 4.

¶ 5 Initially, we set forth our standard of review:

As this Court has summarized:

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1034[.] Thus, in reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must determine if the action of the trial court is based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits. Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only where the moving party's case is clear and free from doubt such that a trial would prove

fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Consulting Engineers, Inc. v. Insurance Company of North America,* 710 A.2d 82, 83–84 (Pa.Super.1998) (citations and quotation marks omitted).

*Wilcha v. Nationwide Mutual Fire Insurance Co.,* 887 A.2d 1254, 1258 (Pa.Super.2005). "An insurer's duty to defend and indemnify the insured may be resolved via declaratory judgment actions." *Id.,* quoting *Erie Insurance Exchange v. Claypoole,* 449 Pa.Super. 142, 673 A.2d 348, 355 (1996) (en banc).

¶ 6 We address Southcentral's first two arguments, that the exclusionary provision in the policy is ambiguous and therefore must be construed in favor of the insured, and that the trial court erred in determining that Southcentral could not recover on the policy as a matter of law, together, as they raise essentially the same issues. Southcentral argues that the phrase "return funds" is ambiguous and should be construed against the drafter of the policy, Birmingham. The trial court disagreed, finding the exclusionary clause is not ambiguous and the policy clearly precludes coverage of the $597,273 demanded to be returned by the Department of Labor. We agree with the trial court, and also agree with Birmingham that in any event, both public policy and case law interpreting the meaning of the word "loss" in insurance contracts would serve to deny coverage for Southcentral's claim.

As our Supreme Court has summarized:

Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such a defense. To determine whether [the insurer] has met its burden of proof we rely on

well-settled principles of contract interpretation.

The task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.

*Madison Construction Company v. Harleysville Mutual Insurance Company*, 557 Pa. 595, 605–06, 735 A.2d 100, 106 (1999) (citations and quotation marks omitted).

*Wilcha, supra* at 1258–1259. *See also Mitsock v. Erie Insurance Exchange*, 909 A.2d 828, 831 (Pa.Super.2006).

 ¶ 7 Here, endorsement eleven of the policy provides, "it is understood and agreed that the Loss shall not include the return funds which were received by the Organization or any other entity from any federal, state, or local governmental agen-

cy...." We agree with the trial court that in context, it is clear that the term "return funds" means funds to be returned to government agencies. (Opinion and order, 2/3/06 at 6.) Southcentral presents a convoluted argument that the provision refers only to funds that constituted "return funds" at the time they were initially received by the organization; as the trial court states, "such a reading of Endorsement 11 is inconsistent with the context of the policy and with the natural meaning of the word return." (*Id.*) Obviously, if such funds were returnable at the very instant in which they were received, they would never have been distributed in the first place.

¶ 8 Southcentral cites *Local 705 International Brotherhood of Teamsters Health & Welfare Fund v. Five Star Managers, LLC*, 316 Ill.App.3d 391, 249 Ill.Dec. 75, 735 N.E.2d 679 (2000), which, if anything, is contrary to its argument. In that case, the Health & Welfare Fund ("H & W") agreed to repay over $16.5 million, plus interest, in funds it had received from a sister pension fund in violation of ERISA.[1] H & W sought coverage which was denied. H & W argued on appeal that the trial court erred when it ruled H & W did not sustain a loss for coverage purposes when it returned the $16.5 million originally transferred from the pension fund. The Illinois appellate court disagreed, stating,

Here, there is no question that the sole basis upon which H & W paid out the settlement amount was the Pension Fund's claim that H & W was required to return those monies which it had no right to possess in the first place. Such a payment can hardly be termed a loss. Nor can such payment create a deprivation any more so than any borrower can be said to suffer a deprivation from being required to repay an indebtedness.

---

1. Employee Retirement Income Security Act, 29 U.S.C.A. § 1001 *et seq.*

*Id.* at 683. "The plain and ordinary meaning of 'loss' cannot be ignored. H & W simply cannot lose that to which it was not legally entitled." *Id.* at 684 (quotation marks and citation omitted).

■ ¶ 9 Similarly, here, Southcentral was required to return to the Department of Labor funds constituting, *inter alia,* "excess revenue drawn down on various unidentifiable contracts, uncategorized expenses and unsupported debits and credits." As it appears, at least in the government's opinion following four audits from the years 1997–2000, that Southcentral was not legally entitled to keep these funds, their return can hardly be deemed a "loss" for insurance purposes. *See also Republic Western Insurance Co. v. Spierer, Woodward, Willens, Denis & Furstman,* 68 F.3d 347 (9th Cir.1995) (where a conflict of interest prevented attorney from earning his retainer and such was disgorged into court, the money was not "damages" for which the policy provided coverage; restitutionary payments are not limited to money wrongfully acquired and are not "damages," specifically rejecting attorney's argument that the money was earned when it was received, because his client had at that time achieved its objective of limiting its potential expenditure on litigation costs).[2]

¶ 10 *Local 705, supra,* relied partly on our supreme court's decision in *Central Dauphin School District v. American Casualty Co.,* 493 Pa. 254, 426 A.2d 94 (1981), wherein a school district tax was struck down by the lower court as illegal and the court directed the payment of refunds. The school district sought indemnification from its insurer in an amount equal to the tax revenue it had illegally collected and was required by the court to return to its taxpayers. Our supreme court held the tax refunds were uninsurable on public policy grounds, stating "it must be concluded that a political subdivision's return of tax monies to its taxpayers collected by an unlawful tax is uninsurable. Hence there has been no 'loss' within the meaning of the insurance policy and no claim lies against appellant (American Casualty)." *Id.* at 260, 426 A.2d at 97. *See also* Larsen, J., concurring ("The school district simply cannot 'lose' that to which it was not legally entitled.' "). *Id.* at 261–262, 426 A.2d at 98. *Accord Level 3 Communications, Inc. v. Federal Insurance Co.,* 272 F.3d 908, 910–911 (7th Cir.2001) ("a 'loss' within the meaning of an insurance contract does not include the restoration of an ill-gotten gain"), citing, *inter alia, Central Dauphin School District, supra.*

¶ 11 The $597,273 which Southcentral is required to repay to the Department of Labor, whether wrongfully acquired willfully or by mistake or accident, is nonetheless not an insurable loss. These are restitutionary funds and are not recoverable, even if there were not an unambiguous exclusionary clause in the policy for "return funds."[3]

---

**2.** Birmingham cites *Conseco, Inc. v. National Union Fire Insurance Co. of Pittsburgh,* 2002 WL 31961447 (Ind.Cir.2002), for the principle that even where the allegedly wrongful conduct is unintentional or the result of mere negligence, an ill-gotten gain innocently obtained and then returned is not a covered loss. *Id.* at *11; Birmingham's brief at 13–14. We note that *Conseco* is an unpublished opinion and therefore is improperly cited and non-binding on this panel; however, we agree with the general proposition as stated above, that even where inadvertently acquired, money or property that has to be returned does not belong to the insured and therefore the insured has not suffered a loss. Otherwise, the insured would be unjustly enriched with a windfall from its own wrongful, albeit innocent, conduct. Certainly this principle applies here.

**3.** Southcentral also argues that the trial court, in deciding Birmingham's motion for judg-

¶ 12 Finally, we turn to Southcentral's argument that it was entitled to a legal defense on the underlying claim. We determine that it was not.

As this Court has summarized:

> The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage. Moreover, the insurer agrees to defend the insured against any suit arising under the policy even if such suit is groundless, false, or fraudulent. Since the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy. In order to determine whether a claim may potentially come within the coverage of the policy, we must first ascertain the scope of the insurance coverage and then analyze the allegations in the complaint.

*Britamco Underwriters, Inc. v. Grzeskiewicz,* 433 Pa.Super. 55, 639 A.2d 1208, 1210 (1994) (citations and quotation marks omitted).

*Wilcha, supra* at 1258.

¶ 13 We have already determined for the reasons discussed *supra* that the underlying claim, *i.e.,* the Department of Labor's demand that Southcentral return funds of $597,273, is not covered by the policy, both because of the policy's express exclusion of "return funds" and because of prevailing case law interpreting the term "loss" as applied in insurance contracts. Therefore, Birmingham had no duty to defend the action.

¶ 14 Furthermore, any duty to defend on the part of Birmingham is limited by the policy's own terms. Endorsement 11 provides, in relevant part, "with regard to Claims arising out of the return, or request to return, such funds, **subject to a retention amount of $1,000,000,** this policy shall pay Defense Costs up to $1,000,000 on a 50% coinsurance basis with 50% of such Defense Costs to be borne by the Insured ...." (emphasis added). Therefore, as the trial court correctly observes, Birmingham's duty to pay defense costs with regard to any claim arising out of a request to return funds only "kicks in" under the policy when the retention amount is $1,000,000 or more. (Opinion and Order, 2/3/06 at 4.)[4] As this claim involves return funds in the amount of $597,273, Birmingham has no duty to pay any of Southcentral's defense costs.[5]

¶ 15 Order affirmed.

---

ment on the pleadings, considered facts not of record and did not construe all reasonable inferences in favor of Southcentral. As the trial court states in its Rule 1925(a) opinion, it supported its findings with extensive citations to the pleadings and attachments thereto. (Trial court opinion, 4/3/06 at 2.) In addition, it is clear from reviewing the record that all pertinent facts as described above are not in dispute. This is a matter involving the interpretation of an insurance contract which is a matter of law, not fact.

4. Birmingham, on appeal, interprets the clause as applying only when Southcentral has first paid $1 million or more defending a claim for return funds. (Birmingham's brief at 15.) However, we believe, consistent with the trial court, that its plain language indicates Birmingham only has a duty to defend the claim when the amount **retained** is in excess of $1 million, regardless of what Southcentral has expended defending the claim. Of course, under either scenario, the provision is inapplicable in this case.

5. We also note that Southcentral argues that

Endorsement 11, excluding coverage of return funds, is inconspicuously displayed and did not alert the insured that the provision excludes coverage. (Southcentral's brief at 17–18.) First, we note that this issue was not explicitly raised in Southcentral's statement of the questions involved and is accordingly waived. Pa.R.A.P. 2116(a). At any rate, as Birmingham points out, Endorsement 11 appears on a separate page and is titled, in bold capital letters, "**GOVERNMENTAL FUNDING DEFENSE COST COVERAGE.**" In addition, to the extent Southcentral argues the exclusion's conspicuousness is somehow reduced by its ambiguity (Southcentral's brief at 18), this issue has already been resolved in Birmingham's favor.