**RYERSON, INC., Plaintiff,**

v.

**FEDERAL INSURANCE COMPANY, Defendant.**

**No. 09 C 4173.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 30, 2010.

Alan J. Martin, Adam K. Hollander, Brad Eric Rago, Barnes & Thornburg LLP, Chicago, IL, for Plaintiff.

Eileen K. Bower, Christopher Howard White, Troutman Sanders LLP, Chicago, IL, Wallace Albert Christensen, Troutman Sanders LLP, Washington, DC, for Defendant.

### *ORDER*

ELAINE E. BUCKLO, District Judge.

In this action, plaintiff Ryerson Inc. ("Ryerson") seeks coverage from its insurer, defendant Federal Insurance Company ("FIC"), for costs incurred in defending and settling a 1999 lawsuit filed by non-party EMC Group, Inc. ("EMC"), concerning the purchase by EMC of Ryerson's subsidiary Inland Engineered Material

Corporation ("IEMC").[1] The EMC action alleged that Ryerson made material misrepresentations, concealing information and documents that showed IEMC's subsidiary Magnetics International, Inc. ("MII") was on the verge of losing its largest customer, thereby diminishing its value. As a result, EMC claimed that it was fraudulently induced into paying Ryerson far more than IEMC was actually worth.

On April 23, 1999, Ryerson's broker provided notice of the EMC action to FIC pursuant to its directors and officers policy. FIC responded in its June 16, 1999 letter denying coverage because the matter did not "meet the definition of a Securities Transaction under the Policy," but that FIC's position was "subject to further evaluation as additional information becomes available" and that it "reserve[d] its right to assert additional terms and provisions under the policy and at law, which may become applicable as new information is learned." The letter also invited Ryerson to "submit for our review any information which you might now have or in the future obtain that you believe may bear upon the question of insurance coverage in this matter." There was no further communication between the parties until Ryerson filed this lawsuit on June 10, 2009. Meanwhile, the EMC action settled pursuant to a 2002 agreement that provided EMC with an 8.5 million dollar "post-closing price adjustment to the Stock Purchase Agreement ... reflecting a change in the purchase price paid by EMC to Ryerson for the purchase and sale of IEMC." The settlement was later reported in Ryerson's 2003 Form 10–K as a "selling price adjustment to the 1998 sale of [IEMC]."

■ FIC moves for summary judgment, citing Seventh Circuit precedent, arguing that the 8.5 million dollar "price adjustment" was restitution for ill-gotten gains and therefore not an insurable "loss" under Illinois law. *Level 3 Comms. v. Federal Ins. Co.*, 272 F.3d 908, 910–11 (7th Cir.2001)(holding that a policyholder does not incur an insurable "loss" when it is compelled to return allegedly ill-gotten gains in connection with the purchase or sale of a company)(citing cases). In response to FIC's motion, Ryerson argues that *Level 3* is factually distinguishable and therefore not binding,[2] and that FIC is estopped from asserting its uninsurable "loss" argument under the "mend-the-hold" doctrine. Neither argument is persuasive.

In *Level 3*, Level 3 sought coverage under a director and officer's policy from the defendant insurer for costs it incurred in defending and settling a securities fraud lawsuit. *Level 3 Comms., Inc. v. Federal Ins. Co.*, No. 96 C 5346, 2000 WL 1053971, *1, 2000 U.S. Dist. LEXIS 10998, *1 (N.D.Ill. July 27, 2000). The underlying lawsuit alleged that the plaintiffs sold stock to Level 3 because of its fraudulent representations. *Level 3*, 272 F.3d at 910. They sought damages amounting to the difference between the value of the stock at the time of trial and the price they received for it. *Id.* The trial court determined that the settlement amount was a "loss" for which the insurer was liable; however, on appeal, the Seventh Circuit reversed, explaining that the settlement,

---

1. The entity that entered into the transaction with EMC was Inland Steel Industries, Inc., and the defendant in the underlying action was Ryerson Tull, Inc. f/k/a Inland Steel Industries, Inc. For purposes of this motion, the parties agree for purposes of this motion that Ryerson is the successor to both of those entities.

2. Ryerson does not address the other authority cited in FIC's motion, stating only that those cases are distinguishable on the same grounds it claims distinguish *Level 3*.

though an outlay by Level 3, was not a "loss" because the relief sought was restitutionary in nature. *Id.* at 910–12. In other words, the settlement amount represented part of Level 3's gain from its officers' misbehavior, which is not insurable under Illinois law. *Id.* at 910–11.

The policy at issue in *Level 3* defined "loss" as "the total amount which any insured person becomes legally obligated to pay ... including but not limited to, damages, judgments, settlements, costs and defense costs." *Level 3*, 2000 WL 1053971, at *1, U.S. Dist. LEXIS 10998, at *3. One of Ryerson's arguments attempting to distinguish *Level 3* is that unlike Ryerson's policy, the policy language in *Level 3* did not define "loss" to include the broad term "damages." (Resp. at 13–14.) Ryerson is incorrect—both policies define loss to include the term "damages." *Compare id. with* Def.'s SOF ¶ 12.

Next, Ryerson contends the case at hand is distinguishable from *Level 3* because unlike the underlying lawsuit in that case, which only sought rescission and restitution in the form of disgorgement, at the time of settlement in the EMC action, EMC requested only compensatory and punitive damages—its request for rescission was withdrawn when EMC sold MMI in 2000. This distinction matters, Ryerson argues, because other courts have denied summary judgment in similar cases where the relief sought in the underlying litigation was not pure restitution. (*See* Resp. 9–11.) However, Ryerson's argument fails because it focuses on damages labels and not on the nature of the relief sought by EMC. *Level 3*, 272 F.3d at 911 ("How the claim or judgment order or settlement is worded is irrelevant. An insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen, even if a more polite word than 'stolen' is used to characterize the claim for the property's return.")

Because EMC sold MMI before its case against Ryerson settled, it was impossible to rescind the purchase agreement and return the parties to their previous positions—exactly the situation in *Level 3. Level 3*, 272 F.3d at 910 ("the plaintiffs' suit sought to rescind the transaction and recover their shares, or rather the monetary value of the shares because their company can no longer be reconstituted"). The evidence provided by both parties shows that EMC only sought damages that would account for the inflated price it paid for IEMC, *i.e.*, restitution. (Def.'s SOF ¶¶ 33, 35–36; Panos Aff. Ex. C at 3.)

Moreover, the cases cited in support of Ryerson's argument are all factually distinguishable in that the underlying lawsuits at issue therein were ongoing and all included claims that were not by law or by their nature restitutionary. *See e.g., Pan Pacific Retail Props., Inc. v. Gulf Ins. Co.*, 471 F.3d 961, 969 (9th Cir.2006)(shareholder claims brought on "value of information" theory and could not as a matter of law seek restitution on their direct claims against the insured company); *Unified Western Grocers, Inc. v. Twin City Fire Ins. Co.*, 457 F.3d 1106, 1115–16 (9th Cir.2006)(summary judgment denied where underlying case sought damages in amount that exceeded the alleged ill-gotten gains by five million dollars); *St. Paul Mercury Ins. Co. v. Foster*, 268 F.Supp.2d 1035, 1045 (C.D.Ill.2003) (summary judgment on "insurable loss" issue denied in part where underlying case included claims where "more than one type of non-restitutionary relief remains a theoretical possibility").

Ryerson also argues that, contrary to the plain language of the settlement agreement and Ryerson's own financial reports, the 8.5 million payment was not a true "price adjustment" to the purchase agreement. Ryerson contends that the parties

only called the settlement payment a "post closing price adjustment" so EMC could avoid taxes. FIC challenges the evidence supporting this argument, an affidavit from one of Ryerson's executives, in a related motion to strike. But regardless of its admissibility, the affidavit cannot support a denial of summary judgment in light of the unambiguous language of the settlement agreement.[3] *See Cannon v. Wittek Cos., Intern.,* 60 F.3d 1282, 1285 (7th Cir.1995)("In the absence of ambiguity, [a party] may not use parol evidence to explain what the terms of [an] agreement mean"). In addition, Ryerson contends that because the 8.5 million dollar payment was not calculated according to the formula for post closing price adjustments provided in the purchase agreement, it must not be a true price adjustment. But the purchase agreement allows for modification of its terms by written agreement of the parties, *e.g.,* the settlement agreement. (Purch. Agmt., Dkt. # 1–2, at 101–2, 133.) Ryerson paid EMC damages that accounted for the inflated price it paid for IEMC. That relief was restitutionary in nature, and therefore not an insurable "loss."[4] *Level 3,* 272 F.3d at 910.

■ Alternatively, Ryerson contends that FIC is estopped from arguing its uninsurable "loss" position under the "mend-the-hold" doctrine because that reason for denial of coverage was not included in FIC's June 1999 declination letter. But

Ryerson cannot create coverage by estoppel. *Ismie Mut. Ins. Co. v. Michaelis Jackson & Assocs., LLC,* 397 Ill.App.3d 964, 337 Ill.Dec. 18, 921 N.E.2d 1156, 1166 (2009); *Employers Ins. of Wausau v. Ehlco Liquidating Trust,* 186 Ill.2d 127, 151, 237 Ill.Dec. 82, 708 N.E.2d 1122 (1999) ("[a]pplication of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered").[5] Moreover, Ryerson fails to explain what prejudice it suffered by FIC's failure to include the "insurable loss" grounds for denial of coverage in the June 1999 letter. *See Harbor Ins. Co. v. Cont'l Bank Corp.,* 922 F.2d 357, 364 (7th Cir.1990)(noting that "mend the hold" applies when a change in defensive position occurs "at some expense to the other party"). FIC is not estopped from relying on *Level 3* and its uninsurable loss position on summary judgment.

For the reasons provided, FIC's motion for summary judgment is granted and its motion to strike is denied as moot.

---

**3.** Ryerson suggests that the "post closing price adjustment" language used in the settlement agreement is not binding because it is only found in the recitals section. This argument is of no moment since none of the operative provisions contradict the recitals, which provide clear context for the operative terms of the settlement. (Def.'s SOF Ex. 3.)

**4.** Ryerson also notes that the FIC policy specifically excludes coverage for loss in connection with claims of excessive consideration in the purchase of securities, but not for the sale of securities, *e.g.,* the sale of MMI. Therefore,

according to Ryerson, because EMC's claims did not fall within the exclusions of the FIC policy, they were covered. But an exclusion is only relevant if the claim first falls within the insuring agreement. *Continental Cas. Co. v. Pittsburgh Corning Corp.,* 917 F.2d 297, 300 (7th Cir.1990) ("an exclusion from insurance coverage cannot create coverage"). Because there was no insurable "loss," EMC's claim did not fall within the insuring agreement, making the exclusions irrelevant.

**5.** Ryerson does not contend that FIC had a duty to defend.