J-A26023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LAURIE A. CAPORALI A.K.A. LAURIE ZUNIC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| EDWARD J. ZUNIC, JR. | |
| Appellant | No. 97 WDA 2016 |

Appeal from the Decree December 22, 2015
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-12-007028-016

BEFORE:  BENDER, P.J.E., RANSOM, J., and MUSMANNO, J.

MEMORANDUM BY RANSOM, J.:                **FILED NOVEMBER 28, 2016**

Edward J. Zunic, Jr. ("Husband") appeals from the December 22, 2015 decree in divorce from Laurie A. Caporali a.k.a. Laurie Zunic ("Wife") and the equitable distribution order incorporated therein.  Husband also appeals from the trial court's order of November 30, 2012, finding that Husband and Wife had entered into a common law marriage.  We affirm.

We adopt the following statement of facts taken from the trial court's opinion, which in turn is supported by the record.  **See** Trial Court Opinion (TCO), 3/14/16, at 1-4.  Husband and Wife met in 1990 and continuously cohabited from 1991 until their separation on October 20, 2011.  They owned a jointly titled home.  Together, they have four children.

Wife filed a complaint in divorce on May 4, 2012, alleging that she and husband were married and raising claims for divorce, alimony *pendente lite*,

alimony, equitable distribution, exclusive possession of the parties' jointly titled residence, injunction from dissipation of marital property, and counsel fees and expenses.

On May 14, 2012, Husband filed preliminary objections and a petition for declaratory relief seeking a declaration that no common law marriage existed between the parties. Wife filed a response in opposition. The trial court held an evidentiary hearing on November 8-9, 2012, at which both parties appeared and presented evidence and testimony.

In support of her contention that the parties had a common law marriage, Wife testified that the parties considered themselves married as of November 24, 1991, after the christening of their first child. At some point thereafter, Husband proposed to her with a diamond and gold solitaire ring. They promised to spend their lives together and planned their married life, with Wife as a stay-at-home mother and Husband working to provide for the family. Husband also gave Wife a gold band ring that she wore on her left ring finger, along with the diamond ring, throughout their twenty-year relationship.

Wife testified that she used the name "Laurie Zunic" and Husband did not object. Wife provided evidence of her use of the name, including: a deed for the jointly-titled residence; a voided check listing the parties as account owners; a mortgage interest statement; the children's school directory; correspondence from the school; utility bills; a wedding invitation; and a contract for home repairs. Wife used the name "Laurie Caporali" for

identification in government documents, medical documents, student loans, and other instances requiring the use of her legal name and marriage status.

Husband testified that throughout their twenty-year relationship, the parties never discussed marriage. Although he knew Wife wore the diamond ring, he claimed it was not an engagement ring and denied giving Wife a wedding band. In support of his contention that the parties were not married, Husband introduced car and homeowner's insurance, student loan, and documents related to government welfare and medical benefits referring to Wife as "Laurie Caporali." Husband testified he was unaware that mail or the mortgage documents referred to Wife as "Laurie Zunic" and insisted he had told Wife to stop using that name.

Wife presented several witnesses, including the parties' pastor, neighbors, and friends, who testified that they were introduced to Wife as "Laurie Zunic" and believed the parties to be married. Husband presented a single witness who denied that the parties presented themselves as husband and wife and believed they were not married.[1]

_____

[1] Both parties also testified about an incident in 2012, when items, including Wife's rings, televisions, furniture, cookware, televisions, memorabilia, and pictures of the children, were taken from the marital home. Husband admitted to removing the televisions and photographs but claimed a burglar had stolen the rest of the items. Husband also repeatedly denied under oath that he had given money to his new fiancée for the purchase of a home. However, when confronted with a gift letter he had signed, Husband acknowledged that he had given her the money.

On November 30, 2012, the court entered an order finding that the Husband and Wife had entered into a common law marriage on November 24, 1991.[2]

On January 15, 2015, the parties appeared before a master. On January 26, 2015, the master filed a report and recommendation that Wife receive 60% of the marital estate, 60% of Husband's pension, the jointly titled residence, and alimony of $900.00 per month for ten years. Husband filed a motion to stay the recommendation for payment of alimony, which was denied. Husband filed exceptions to the recommendations, arguing that the parties were never married. The court dismissed the exceptions on May 18, 2015. The court entered a decree in divorce on December 23, 2015.[3]

Appellant timely filed the instant appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a responsive opinion.

We would first note that Husband's brief does not include a statement of questions involved pursuant to Pa.R.A.P. 2116(a). **See** Pa.R.A.P. 2116(a); **see also Southcentral Employment Corp. v. Birmingham Fire**

_____

[2] After the entry of that order, Husband filed a motion for leave to appeal to this Court, requesting that the trial court enter its common law marriage ruling as a final order pursuant to Pa.R.A.P. 341(c), which the trial court denied.

[3] During the pendency of divorce proceedings, Husband's actions forced the trial court to enter numerous other orders including: ordering Husband to revoke a quitclaim deed he had had Wife sign while she was recovering from surgery; ordering Husband to reinstate Wife as a beneficiary to his pension and life insurance policies; and appointing Wife as an agent to avoid foreclosure of the jointly-titled residence.

*Ins. Co. of Pennsylvania*, 926 A.2d 977, 983 n. 5 (Pa. Super. 2007) (noting issues not explicitly raised in the statement of questions involved are waived). However, as the statement of questions is mentioned in the table of contents and its omission appears inadvertent, we decline to find waiver.

On appeal, Husband challenges the trial court's finding that the parties had entered into a valid, common law marriage. Husband avers that Wife did not prove by clear and convincing evidence that *verba in praesenti* were exchanged and also challenges the weight of the evidence. Appellant's Brief at 4, 14.

In equitable distribution proceedings, the trial court has broad discretion in fashioning an award, and an award will not be overturned absent an abuse of discretion. *Brown v. Brown*, 669 A.2d 969, 972 (Pa. Super. 1995). The court makes determinations concerning the weight of the evidence and the credibility of witnesses and conclusions of law, and where they are supported by the record and absent an abuse of discretion, we will not overturn the ruling. *Staudenmayer v. Staudenmayer*, 714 A.2d 1016, 1022 (Pa. 1998); *see also Childress v. Bogosian*, 12 A.3d 448, 455 (Pa. Super. 2011); *see also Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009).

The instant matter involves a common law marriage. A common law marriage may only be created by an exchange of words in the present tense, spoken with the specific purpose that the legal relationship of husband and wife is created by such exchange. *Staudenmayer*, 714 A.2d at 1020. The

burden of proving the existence of a common law marriage rests on the proponent of the marriage, and courts review such a claim with scrutiny. **Bell v. Ferraro**, 849 A.2d 1233, 1235 (Pa. Super. 2004). The agreement may be made without a witness and does not require a specific form of words, only that the party demonstrates a present, legal intent to enter into the legal relationship of marriage. **See Staudenmayer**, 714 A.2d at 1020.

When the parties are available to testify, the party claiming the common law marriage must produce clear and convincing evidence of the exchange of these words, or *verba in praesenti*. **Staudenmayer**, 714 A.2d at 1021. If a party can produce clear and convincing evidence of the exchange, the *verba in praesenti* creates a rebuttable presumption in favor of common law marriage. **Id.** However, when faced with contradictory testimony, the party claiming a common law marriage may introduce evidence of constant cohabitation and reputation of marriage to support their claim. **Id.**

Husband claims that Wife did not establish by clear and convincing evidence that *verba in praesenti* were exchanged. Husband argues that because no date was established for the exchange, because Wife had stated on several documents that she was not married, and because his fact witness denied that *verba in praesenti* were exchanged, Wife could not meet her burden.

However, the trial court found credible Wife's testimony that the parties verbally promised to spend their lives together, planned their lives as

husband and wife, and Husband gave Wife engagement and wedding rings. The trial court did not find credible Husband's testimony that the parties had never discussed marriage. TCO at 5-7. We may not disturb these credibility finding on appeal. *Staudenmayer*, 714 A.2d at 1022.

Husband's argument regarding the uncertainty of the date is equally unavailing, as he does not cite any case law that establishes that a party must supply a date *verba in praesenti* were exchanged. *See Giant Food Stores, LLC v. THF Silver Spring Development, L.P.*, 959 A.2d 438, 444 (Pa. Super. 2008) ("Appellant's issue on appeal is waived because [Appellant] has failed to set forth in its appellate brief any citation to legal authority pertaining to [Appellant's] argument."). Additionally, as both Wife and Husband appeared and offered contradictory testimony at the hearing, it was appropriate for the trial court to consider other evidence, including cohabitation and a reputation of marriage, to determine whether a marriage existed. *See Staudenmayer*, 714 A.2d at 1021. Thus, the trial court properly considered evidence that the parties had cohabited for twenty years with no significant gaps, and that they had a reputation for marriage in the community, including at their children's school, with their church, and with their friends.

Finally, Husband makes a number of arguments that are, essentially, challenges to the weight of the evidence, including 1) Wife stated she was unmarried on affidavits of paternity; 2) Wife was not listed as a spouse on the tax returns Husband filed as head of household; 3) Wife changed her

testimony regarding the date the parties entered into the marriage; 4) documents requiring legal identification identified Wife as "Laurie Caporali" rather than Laurie Zunic; 5) the trial court disregarded the testimony of Kiersten Frankowski. Husband avers that because Wife "did not acknowledge" the marriage, the trial court erred in finding that a common law marriage existed. Appellant's Brief at 14-20.

As noted above, it is the trial court's exclusive province to determine the weight to be assigned to the evidence and testimony of witnesses. *Mackay*, 984 A.2d at 533. The trial court heard the testimony and weighed the evidence, and found Wife's testimony credible that she referred to herself as unmarried and used the name "Laurie Caporali" when legal documentation and identification was required, but that otherwise she used the name "Laurie Zunic" and was known as "Laurie Zunic" in the community. The trial court found credible the testimony of Wife and Wife's witnesses, namely, that the parties considered themselves married, presented themselves as married, and were known as married in the community. TCO at 8-14.

The trial court did not find credible Husband's testimony that he objected to her use of the name "Zunic," or that he was unaware of her use of the name on the mortgage documents. The trial court noted additional instances of Husband's dishonestly, referencing the quitclaim deed, the missing personal items, and his denial under oath that he had given money to his fiancée. TCO at 8-14.

The record supports the trial court's conclusions that, based upon these credibility determinations and the evidence introduced at the hearing, the parties entered into a common law marriage. Accordingly, the trial court did not abuse its discretion. ***See Staudenmayer***, 714 A.2d at 1021; ***see also Childress***, 12 A.3d at 455.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/28/2016